**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JOY SIPPLE, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 3:24-cv-271 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| CLUB OCEANO LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

---

**ENTRY AND ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS OF JOY SIPPLE (DOC. NO. 23), AND DENYING: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS OF ANA MORGAN (DOC. NO. 24); DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS OF JENNA SCHULZ (DOC. NO. 25); DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS OF MALAK NAJI (DOC. NO. 26); DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS OF ISABELLE RAMBY (DOC. NO. 27); AND, DEFENDANT CLUB OCEANO'S MOTION TO STRIKE DECLARATIONS OF CHELSEA OLIVER, JHANE CARTER, KATELYN HICKS, AND JOY SIPPLE (DOC. NO. 45)**

---

This matter is now before the Court for consideration of six motions filed by Defendant Club Oceano LLC ("Oceano" or "Defendant"). Seeking a final disposition in its favor, Oceano has filed Defendant's Motion for Summary Judgment on Claims of Joy Sipple ("Sipple Motion") (Doc. No. 23), Defendant's Motion for Summary Judgment on Claims of Ana Morgan ("Morgan Motion") (Doc. No. 24), Defendant's Motion for Summary Judgment on Claims of Jenna Schulz ("Schulz Motion") (Doc. No. 25), Defendant's Motion for Summary Judgment on Claims of Malak Naji ("Naji Motion") (Doc. No. 26), and Defendant's Motion for Summary Judgment on Claims of Isabelle Ramby ("Ramby Motion") (Doc. No. 27) (collectively, the "Dispositive Motions").

Oceano further moves to strike affidavit testimony provided by Plaintiffs Joy Sipple ("Sipple"), Ana Morgan ("Morgan"), Jenna Schulz[1] ("Schulz"), Malak Naji ("Naji"), and Isabelle Ramby ("Ramby") (collectively, the "Plaintiffs"), in response to Defendant's Dispositive Motions. (Doc. No. 23.)

In short, Plaintiffs claim that, throughout their prior employment by Oceano, they were subjected to a sexually hostile work environment, in violation of state and federal law. (*See* Doc. No. 1 at PageID 26, 29.) Sipple and Naji go further, alleging that Defendant retaliated against them when they tried to report sexual harassment in the workplace. (*Id.* at PageID 27-28, 30.) By its largely duplicative Dispositive Motions, Defendant argues that Plaintiffs cannot establish sexually hostile working conditions at Oceano that were so severe or pervasive as to entitle Plaintiffs to relief, as a matter of law. (*See* Doc. Nos. 23-27.) Otherwise, Oceano posits that none of the Plaintiffs can recover under a theory of retaliation. (*Id.*) Indeed, Oceano even makes this contention for Plaintiffs who never alleged a theory of retaliation to begin with. (*See* Doc. No. 24 at PageID 1044-45; Doc. No. 25 at PageID 1066-67; Doc. No. 27 at PageID 1105-06.)

For the reasons set forth herein, the Court shall **GRANT**, **IN PART**, and **DENY**, **IN PART**, the Sipple Motion, but **DENY** the remainder of Oceano's Dispositive Motions. As explained below, the Court shall also **DENY** Defendant Club Oceano's Motion to Strike Declarations of Chelsea Oliver, Jhane Carter, Katelyn Hicks, and Joy Sipple ("Motion to Strike") (Doc. No. 45).

## I. BACKGROUND

Broadly, Plaintiffs were employed by Oceano during the years of 2021 through 2023. (*See*

[1] Plaintiff Schulz has since gotten married and now goes by the name "Jenna Leonard." However, at all times relevant to this action, she went by her maiden name of "Schulz." For the sake of consistency, the Court refers to Plaintiff Schulz by her maiden name.

Doc. No. 1 at PageID 3, 9-10, 15, 17, 21.)[2] For context, Oceano is a high-end restaurant that employs 30 to 35 people at any given time. (Doc. No. 19-2 at PageID 348; Doc. No. 19-4 at PageID 477.) Each of the Plaintiffs worked for Oceano as either a server or a hostess when the events of this case occurred. (Doc. No. 19-1 at PageID 324; Doc. No. 19-2 at PageID 399; Doc. No. 20-2 at PageID 653, 665-66; Doc. No. 21-1 at PageID 726, 734; Doc. No. 22-1 at PageID 861-62.) Sam Zheng ("Zheng") is Oceano's general manager and, at all times relevant here, Zheng was responsible for directly supervising Plaintiffs in the course of their employment. (*See* Doc. No. 19-4 at PageID 478, 498, 506-09.)

Chiefly, Plaintiffs claim that Zheng sexually harassed them and other female employees working at Oceano. (*See generally* Doc. No. 1 at PageID 3-26.) For her part, Sipple attests that Zheng asked her on dates and spoke in sexual innuendo on a regular basis at Oceano and often touched her inappropriately as well. (Doc. No. 22-1 at PageID 862, 870.) Sipple began working at Oceano as a server in the Summer of 2021 and was there for approximately one year before Zheng's behavior allegedly veered into the realm of sexual harassment. (*Id.* at PageID 854, 862-63.) Zheng purportedly started by asking Sipple on any number of dates. (*Id.* at PageID 863.) Although Sipple cannot remember the finer details of specific instances where Zheng propositioned her, she has testified that Zheng would often invite her to dinner, to see a movie, to accompany him at parties thrown by his personal friends, to get drinks, and the like. (*Id.*) Zheng apparently "always said inappropriate stuff," but progressively became more brazen. (*Id.* at PageID 862-63, 870.) By the time Sipple finally left her employment at Oceano in December 2023, Zheng had allegedly gone so far as to whisper in Sipple's ear that he would be her children's "step-daddy" and slapped Sipple on the butt with either his hand or a restaurant menu on

[2] The Plaintiffs were not all necessarily employed by Oceano for the entirety of 2021 through 2023, but Plaintiffs' tenure at Oceano overlapped during this span of time.

approximately four or five occasions. (*Id.*)

When Zheng was not being plainly sexual toward Sipple, he was allegedly demeaning her appearance. Among other things, Sipple testified that Zheng told her she had ugly hands, after Sipple had already voiced insecurities about how masculine her hands looked. (*Id.* at PageID 908-09.) Zheng also purportedly commented on Sipple's age and breasts. (*Id.*) In particular, Zheng referred to Sipple as "flat-chested" 12 to 15 times and, once responding to a passing comment about topless maids, suggested that Sipple could not be a topless maid because her breasts were too small. (*Id.* at PageID 910-12.)

Sipple eventually reported Zheng's behavior in August of 2023, but saw no real change in her working environment. (*Id.* at PageID 925-26.) Instead, Sipple testified that her superiors at Oceano began avoiding her and her concerns, until she finally quit in December 2023. (*Id.* at PageID 907-08.)

Naji likewise testified that Zheng frequently asked her out on dates and commented on her appearance. Naji came onboard as a server at Oceano in May of 2022 and was removed from Oceano's shift schedule at the very beginning of 2024. (Doc. No. 19-1 at PageID 324.) By way of background, Naji and her husband are Iraqi immigrants to the United States and Naji's husband often goes back to Iraq to earn money to support his family in America. (*Id.* at PageID 217, 224.) With this dynamic, Zheng would supposedly invite Naji to join him for drinks when he knew her husband was out of the country. (*Id.* at PageID 260-61.) Bear in mind that Zheng only knew Naji's husband was out of town because it affected Naji's work schedule. (*Id.*) When her husband was in Iraq, Naji played the role of a single parent to a small child and needed to adjust her working hours accordingly. (*Id.*) Apart from asking her on dates, Zheng apparently also demeaned Naji's physical presentation, calling her chubby and reprimanding her for the smell of her perfume. (*Id.*

at PageID 266-68.)

Naji claims that she witnessed Zheng sexually harass her coworkers. Naji has testified that she watched Zheng smack Sipple on the butt with a menu. (*Id.* at PageID 254.) In a similar vein, Naji was purportedly present on at least one occasion where Zheng commented on the size of Sipple's breasts. (*Id.* at PageID 258-59.) Zheng further commented on Naji's breasts, stating that while the server's uniform may look masculine on Sipple because she is "flat-chested," the uniform did not look masculine on Naji because of her larger breasts. (*Id.*) Naji also witnessed at least one other incident where Zheng stared at her coworker's breasts for an extended period of time, while commenting on how good the coworker looked. (*Id.* at PageID 269.)

Morgan began with Oceano as a server in August 2022 and claims that Zheng consistently harassed her until she left in March of 2023. (*See generally* Doc. No. 1 at PageID 9-10.) During her time at Oceano, Morgan claims that Zheng kissed her on the lips twice, without consent. (*See* Doc. No. 21-1 at PageID 761-62.) Morgan describes a couple of instances where Zheng introduced her to people as his girlfriend and grabbed her by the waist to pull her closer to him. (*Id.* at PageID 740-42, 758.) She further describes other times where Zheng purportedly caressed her butt and complimented her breasts. (*Id.* at PageID 751.) Finally, Morgan depicts a holiday party where Zheng allegedly plied her with alcohol and invited her to party with him elsewhere. (*Id.* at PageID 754-55.) In all, Morgan's testimony paints Zheng as a man who generally touched her quite freely. (*See id.* at PageID 759-60.)

Looking to Oceano's hostesses, Schulz worked for Defendant as a hostess from April 2022 to October 2024. (Doc. No. 19-2 at PageID 399.) Zheng required hostesses, like Schulz, to wear dresses and, in imparting this directive onto her, instructed Schulz to dress sexier. (*Id.* at PageID 351.) Along those lines, Zheng went on to bring Schulz some of his wife's clothes to wear to

work. (*Id.* at PageID 350.) Zheng commented on Schulz's appearance, encouraging her to not wear a bra at work and telling her that her butt looked good in a pair of leggings, when Schulz was not wearing a dress. (Doc. No. 19-3 at PageID 420-21.) After telling her that her butt looked good, Zheng purportedly touched Schulz's butt on at least two or three occasions. (Doc. No. 19-2 at PageID 363-64.) Schulz testified that she told her boyfriend (now-husband) that Zheng touched her butt, but did not report it to other Oceano management for fear of retaliation. (*Id.* at PageID 365.)

Ramby, who was another hostess at Oceano between the Fall of 2019 and December 2021, claims various inappropriate behaviors by Zheng. Ramby avers that Zheng would often approach the hostess stand and grab the back of her neck or the small of her back. (Doc. No. 20-2 at PageID 621.) Along with these physical invasions, Zheng twice allegedly told Ramby, who was under the legal drinking age at the time, that he would take her out if she were old enough to drink. (Doc. No. 20-1 at PageID 611.) There is no evidence that Zheng might seek Ramby's consent to take her on such a date. Ramby also offers evidence that, in her presence, Zheng essentially made fun of another hostess for being on her period. (*See* Doc. No. 20-2 at PageID 714.) Otherwise, Ramby succinctly stated that Zheng gave off a "bad vibe." (*Id.* at PageID 679.) To that end, Zheng would apparently linger and stare at women working at Oceano—particularly watching the hostesses wash windows in their dresses—make suggestive comments, and flirt with employees at the hostess stand on a regular basis. (*Id.*)

As added flavor, throughout the events of this case, Zheng developed a reputation at Oceano for having extramarital affairs with his subordinates. With the exception of Ramby, all of the Plaintiffs testified that Zheng's affair with another Oceano employee, Hadley Smith ("Ms. Smith"), was well known at the restaurant. (*See* Doc. No. 19-1 at PageID 244-45; Doc. No. 19-3

at PageID 448; No. 21-1 at PageID 771; Doc. No. 22-1 at PageID 923-24.) Zheng acknowledged his relationship with Ms. Smith at his own deposition. (Doc. No. 19-4 at PageID 489.) He similarly admitted to a second extramarital affair with another Oceano employee, though he was not initially forthcoming with the information. (*Id.* at PageID 494-95.)

In addition to Zheng's harassment, three of the Plaintiffs were allegedly plagued by Oceano lead server, Jamil Geyer ("Mr. Geyer"). Sipple seems to have received the brunt of Mr. Geyer's harassment. Sipple testified that Mr. Geyer spread the false rumor that he and Sipple had sex, that Mr. Geyer showed Sipple a picture of his genitals, that Mr. Geyer texted Sipple sexually explicit messages, and that Mr. Geyer regularly hit on Sipple. (*See* Doc. No. 22-1 at PageID 889-90, 902.) Of these separate occurrences of harassment by Mr. Geyer though, Sipple only reported Mr. Geyer to Oceano management for starting the rumor that he and Sipple had slept together and for showing her a picture of his genitals. (*Id.* at PageID 892-93.) Naji had similar, although more general, issues with Mr. Geyer. Mr. Geyer frequently asked Naji on dates, commented on her butt and breasts, and occasionally touched Naji's butt to wipe detritus off of it. (Doc. No. 19-1 at PageID 270.) Naji reported Mr. Geyer to Oceano management but was simply told not to take Mr. Geyer seriously. (*Id.*) And, lastly, Schulz claims that Mr. Geyer once made a comment to her about the size of his penis and, in so many words, told Schulz that he wanted to have sex with her mother. (Doc. No. 19-3 at PageID 436.) Schulz testified that she did report these comments to Oceano management, but it is unclear whether Oceano took any action in response thereto. (*Id.*)

Plaintiffs exhausted their administrative remedies with the U.S. Equal Employment Opportunity Commission and subsequently filed their current Complaint (Doc. No. 1) on October 13, 2024. Pursuant to their allegations, each of the Plaintiffs claims that she was subjected to a sexually hostile work environment at Oceano, in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), and Ohio state law. (*Id.* at PageID 26-27, 29-30.) Sipple and Naji aver that they were unlawfully retaliated against at Oceano for their proximity to claims that Zheng was the perpetrator of sexual harassment. (*Id.* at PageID 27-28, 30.)

This matter proceeded through discovery and Oceano filed its Dispositive Motions on April 29, 2026. (Doc. Nos. 23-27.) Plaintiffs filed their respective responses in opposition to the Dispositive Motions on June 3, 2026 (Doc. Nos. 34-38), and Oceano submitted final reply briefing on July 1, 2026 (Doc. Nos. 40-44). Oceano's Dispositive Motions are then ripe for review and decision.

When Plaintiffs responded to Oceano's Dispositive Motions, they filed Plaintiffs' Notice of Filing Evidence in Opposition to Defendant's Motion for Summary Judgment, which included the affidavit testimony of Chelsea Oliver, a former plaintiff to this action, Sipple, and two other former Oceano employees (the "Declarations"). (*See* Doc. No. 33 at PageID 1384.) Contemporaneously with its reply briefing on the Dispositive Motions, Oceano filed its instant Motion to Strike, seeking remove the Declarations from the scope of evidence the Court may consider with respect to the Dispositive Motions. (Doc. No. 45.) That Motion to Strike has likewise been fully briefed and now sits ripe for the Court's adjudication as well.

## II. <u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and

admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c).

The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id.* at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid

summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id*. The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*.

## III. ANALYSIS

### A. Motion to Strike

The Court begins its analysis here by disposing of Oceano's Motion to Strike, as a threshold matter. Oceano posits that the Declarations offered by Plaintiffs should be stricken from the record for three reasons. First, Oceano argues that Plaintiffs should not be permitted to offer the Declarations to establish sexually harassing behaviors by Zheng that Plaintiffs were not subjectively aware of. (Doc. No. 45 at PageID 1809-10.) Second, Oceano claims that the Declarations should be stricken because they contain inadmissible hearsay. (*Id.* at PageID 1811.) Third, Oceano avers that the Declarations were not provided by Plaintiffs in the course of discovery and, therefore, the Declarations constitute surprise evidence. (*Id.* at PageID 1811-12.) Each of these arguments is a non-starter.

Even if Plaintiffs were not subjectively aware of the harassing behavior espoused by the Declarations, this does not mean the Declarations should be stricken. Rather, Plaintiffs' subjective knowledge of sexual harassment they did not themselves experience is an issue going to the merits of the claims in this matter. In other words, Oceano must contend with the Declarations; it cannot use a merits argument to render them inadmissible.

Furthermore, even if the Declarations contain hearsay, they need not necessarily be stricken. Fed. R. Civ. P. 56 requires that a party asserting a genuine dispute of material fact must support their assertion by "citing to particular parts of materials in the record …." Fed. R. Civ. P. 56(c)(1). Though a party's "proffered evidence need not be in admissible *form*, [] its *content* must

be admissible." *Bailey v. Floyd Cnty. Bd. of Educ. By & Through Towler*, 106 F.3d 135, 145 (6th Cir. 1997) (citing *Celotex*, 477 U.S. at 324) (emphasis in original). Rule 56 further provides that a party may object to his adversary's cited materials on the ground that the contents of the materials "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "Once an objection is properly made, the proponent must 'show that the material is admissible as presented or … explain the admissible form that is anticipated.'" *Magnum v. Repp*, 674 F. App'x. 531, 536 (6th Cir. 2017) (quoting Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment)). At bar, Oceano only objects to the form in which the Declarations provide evidence, but Oceano does not suggest that there is no form in which the content adduced by the Declarations could be admitted into evidence. Therefore, Oceano's evidentiary objection to the Declarations is fundamentally lacking.

What fares the worst is Oceano's assertion that the Declarations were never provided in the course of discovery. As far as the Court can tell, Plaintiffs produced the Declarations to Oceano on February 19, 2024, upon filing charges of discrimination with the U.S. Equal Employment Opportunity Commission. (*See* Doc. No. 47-1.) Moreover, when Plaintiffs responded to Oceano's requests for production of documents, they pointed Oceano to the documents included in their EEOC charges. (*See* Doc. No. 45 at PageID 1819.) As if this were not notice enough, Plaintiffs also affirmatively used the Declarations to cross-examine Zheng at his deposition. (Doc. No. 19-4 at PageID 545-87.) Counsel indicated neither surprise nor objection at that time.

In total, Oceano offers such meritless arguments in favor of its Motion to Strike that they are effectively null. Accordingly, Oceano's Motion to Strike is **DENIED**.

**B. <u>Motions for Summary Judgment</u>**

On the merits, Oceano's Dispositive Motions set two general targets. In each of the

Dispositive Motions, Oceano first argues that none of the Plaintiffs here can point to a disputed issue of fact surrounding their claims of a sexually hostile work environment. (*See e.g.*, Doc. No. 23 at PageID 1013-24.) Oceano then proceeds to argue that none of the Plaintiffs can establish a *prima facie* case that Oceano retaliated against them. (*See id.* at PageID 1024-26.) The Court considers both of these overarching issues, in turn.

**i. <u>Sexually Hostile Work Environment</u>**

As it pertains to claims of a sexually hostile work environment, Title VII makes it "an unlawful employment practice for an employer … to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's … sex …." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff may establish a violation of Title VII by proving that [] discrimination based on sex created a hostile or abusive work environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 825 (6th Cir. 1997)). Discrimination of this ilk is present "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment …." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted).

In the Sixth Circuit, these anti-discriminatory principles translate into a five-part test. *See Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 683 (6th Cir. 2024). In particular, a plaintiff seeking to establish that she has been subjected to a sexually hostile work environment must demonstrate that:

> (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment complained of was based on [sex], (4) the

> harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813-14 (6th Cir. 2013) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 501, 511 (6th Cir. 2011)) (alteration in original). The fifth element of this test—the requirement that a plaintiff set forth a basis for employer liability—will ultimately differ depending on whether the plaintiff claims that she was subjected to a hostile work environment by her supervisor or by her coworker. *See Williams v. Gen. Motors Corp.*, 187 F.3d at 560-61 (supervisor liability); *see also Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (coworker liability).

Presently, Oceano concedes that Plaintiffs, as women, can demonstrate their membership in a protected class, but argues that Plaintiffs cannot satisfy any other prong of the hostile work environment test. (Doc. No. 23 at PageID 1014; Doc. No. 24 at PageID 1038; Doc. No. 25 at PageID 1057; Doc. No. 26 at PageID 1078; Doc. No. 27 at PageID 1098.) Yet, in substance, Oceano only offers argument with respect to whether the harassment at Oceano was severe or pervasive, and whether Plaintiffs have established bases for employer liability. (*See* Doc. No. 23 at PageID 1014-24; Doc. No. 24 at PageID 1038-44; Doc. No. 25 at PageID 1057-66; Doc. No. 26 at PageID 1078-87; Doc. No. 27 at PageID 1098-105.) In the absence of substantive argument by Oceano, and on the evidence currently in the record, the Court finds that Plaintiffs are able to meet the first three elements of the above-referenced hostile work environment test, without issue. Each of the Plaintiffs is a woman, each has testified to harassment that they subjectively found to be unwelcome, and each claims that the harassment she faced at Oceano was sexual in nature.

In all reality, Oceano contends that Plaintiffs have failed to show that any of the unwelcome sexual harassment they faced was either severe or pervasive, and that Plaintiffs cannot make out a

case for employer liability on any of their claims of sexual harassment. Thus, the Court focuses its analysis of Plaintiffs' sexually hostile work environment claims on these two issues.

### 1. Severe or Pervasive

As indicated above, Defendant spends a sizable chunk of its Dispositive Motions asserting that the harassment Plaintiffs suffered at Oceano was neither severe nor pervasive. In filing five separate Dispositive Motions, Oceano attempts to separate the experiences of each of the Plaintiffs so that each woman's factual assertions stand alone. With those factual allegations standing alone, Oceano paints the instances of sexual harassment perpetrated upon the Plaintiffs as sporadic and relatively benign, even if inappropriate. (Doc. No. 23 at PageID 1014-19; Doc. No. 24 at PageID 1038-42; Doc. No. 25 at PageID 1057-62; Doc. No. 26 at PageID 1078-83; Doc. No. 27 at PageID 1098-103.)

At the outset, "[w]hether conduct is severe or pervasive is 'quintessentially a question of fact.'" *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006) (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999)). Summary judgment will only be appropriate in this regard "if the evidence is so one-sided that there is no genuine issue of material fact as to whether there was a hostile work environment." *Hawkins*, 517 F.3d at 333 (citing *Abeita v. Transamerica Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir. 1998)). To be sure, a plaintiff's inability to recount specific instances of harassment will not doom her claim at summary judgment, as such an inability "goes to the weight of her testimony, a matter for the finder of facts." *Abeita*, 159 F.3d at 252.

When deciding whether workplace sexual harassment rises to the level of being severe or pervasive as a matter of law, "courts look at the totality of the circumstances." *Hawkins*, 517 F.3d at 333 (citing *Harris*, 510 U.S. at 23; *Williams v. Gen. Motors Corp.*, 187 F.3d at 562). By this

approach, courts must "consider harassment by all perpetrators combined when analyzing whether a plaintiff has alleged the existence of a hostile work environment." *Williams v. Gen. Motors Corp.*, 187 F.3d at 562. In a similar vein, courts may also "consider similar acts of harassment of which a plaintiff becomes aware during the course of his or her employment, even if the harassing acts were directed at others or occurred outside of the plaintiff's presence." *Hawkins*, 517 F.3d at 336. These modes of interpretation comport with a common understanding of the word, "environment," as "the surrounding conditions, influences or forces which influence or modify." *Id.* (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 661 (6th Cir. 1999)) (cleaned up).

To properly evaluate the totality of the circumstances at play in a hostile work environment case, instances of alleged harassment "must be judged by both an objective and a subjective standard." *Black*, 104 F.3d at 826 (citing *Harris*, 510 U.S. at 21-22). Subjectively, the victim plaintiff must regard her environment as abusive. *Id.* Pertinent here, any inquiry into a plaintiff's subjective perception of events "should center, dominantly, on whether the discriminatory conduct has unreasonably interfered with the plaintiff's work performance." *Williams v. Gen. Motors corp.*, 187 F.3d at 567 (citation and internal quotation marks omitted). "To show such an inference, '*the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment. The employee need only show that the harassment made it more difficult to do the job*.'" *Id.* (quoting *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1998)) (emphasis in original).

Objectively, reviewing courts must consider whether a reasonable person would find the victim's working environment to be hostile or abusive. *Black*, 104 F.3d at 826 (citing *Harris*, 510 U.S. at 21-22). While the question of whether a reasonable person would regard a work environment as hostile is inherently imprecise and fact-specific, the Supreme Court has provided

courts with a non-exhaustive list of factors to utilize under this objective standard. *See Harris*, 510 U.S. at 23. "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* A plaintiff cannot succeed on a hostile work environment claim based on fleeting offensive utterances, but she may succeed if she can assert that abusive comments were "commonplace, ongoing, and continual …." *Abeita*, 159 F.3d at 252 ("[P]laintiff's assertion that comments like these were commonplace, ongoing, and continual establishes that the statements were [] pervasive or widespread …"). Furthermore, "harassment involving an 'element of physical invasion' is more severe than harassing comments alone. *Hawkins*, 517 F.3d at 334 (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d at 563). In any event, "'isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Phillips v. UAW Int'l.*, 854 F.3d 323, 327 (6th Cir. 2017) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (internal quotation marks omitted).

**a. <u>Sipple</u>**

In the matter at hand, the court finds that Sipple has at least established pervasive discriminatory conduct at Oceano, sufficient to survive summary judgment. Sipple has attested that she found the treatment she received from the likes of Zheng and Mr. Geyer to be abusive. Taking all facts in her favor, the Court can infer that Sipple would have found such harassment to make her job more difficult. To hear her tell it, all of her attempts to report harassment at Oceano were essentially ignored and, eventually, management at Oceano stopped engaging with Sipple altogether. An employee is entirely justified in finding her job more difficult if her supervisors provide her with no operational support.

On the objective prong, a reasonable juror could hear Sipple's testimony and deduce that she was subject to abuse while working at Oceano. Sipple claims that she was a victim of physical invasion when Zheng would smack her butt. Whether he smacked her butt to shoo her back to work or gratify himself sexually is an issue of fact. What is more, Zheng purportedly asked Sipple on multiple dates and made lude statements, such as proposing that he be a "step-daddy" to Sipple's children. Zheng also apparently inserted himself on more than one occasion to tell Sipple that she was "flat-chested." Crucially, Sipple testified that Zheng made inappropriate comments such as these all of the time.

Apart from sexual advances and innuendos, Zheng seemingly made a habit of demeaning Sipple's physical appearance in ways that were plausibly rooted in anti-female animus. *Williams v. Gen. Motors Corp.*, 187 F.3d at 565 ("[T]he law recognizes that non-sexual conduct may be illegally sex-based where it evinces anti-female animus, and therefore could be found to have contributed significantly to the hostile work environment" (citation and internal quotation marks omitted)). To that end, Zheng purportedly insulted Sipple's hands as ugly, which relies on the presumption that women should have pretty hands. Zheng further insulted Sipple due to her age, calling her old, which relies on the misogynist notion that a woman loses her worth as she ages. There is no evidence whatsoever that Zheng similarly demeaned his male employees with any amount of regularity. But, with the women, Sipple has testified that Zheng frequently levied such insults.

As it pertains to Zheng, the Court additionally considers Zheng's extramarital affairs with subordinates. In essence, everyone at Oceano knew, or at least suspected, that Zheng was engaging in sexual relationships with his employees. Interpreting this fact in Plaintiffs' favor, a reasonable factfinder could conclude that the Plaintiffs accurately thought Zheng's statements and behavior

were more insidious than harmless coworker banter.

The hostilities that Sipple faced also did not stop with Zheng. Mr. Geyer frequently touched Sipple, propositioned Sipple, and started rumors that he had sex with Sipple. Taken together with her allegations against Zheng, a reasonable juror could find that Sipple was receiving abuse from every angle during her tenure at Oceano.

Taking Sipple's testimony regarding the frequency of abusive conduct at Oceano as true, it would be entirely reasonable to find that she was subjected to a work environment permeated with harassment and ridicule. That Sipple cannot recall more specific instances of harassment is a matter of concern, but it is a matter of concern for a duly empaneled jury. It is not an issue for the Court to address on summary judgment. Accordingly, the Court finds that Sipple satisfies the severe or pervasive component of the hostile work environment framework.

**b. <u>Naji</u>**

The Court next finds that Naji has shown herself as a victim of pervasive sexual harassment at Oceano. Without argument to the contrary, the Court takes Naji at her word that she found Zheng and Mr. Geyer's harassment to make her job more difficult. Otherwise, Naji has testified that Zheng frequently asked her out on dates when her husband was out of town. Viewing the totality of the circumstances, Zheng only knew Naji's husband was absent when she told him for the purpose of adjusting her work schedule. Naji had a very young child to look after. But, based on Naji's testimony, Zheng continually used this information to find opportune moments where he might invite Naji to join him for drinks. Against that backdrop, a reasonable factfinder could find Zheng's invitations to be predatory rather than friendly. Additionally, Naji testified that Zheng not only commented on her breasts, but commented on Sipple's breasts in Naji's presence.

Like Sipple, Zheng also demeaned Naji when he was not objectifying her. He called her

chubby multiple times. To call a woman like Naji chubby may not be actionably abusive, even if exceptionally rude. However, drawing all inferences in Naji's favor, the Court finds that it could also reasonably be said to evince anti-female animus. Zheng took issue with Naji for the smell of her perfume. This too could be innocuous, though it could also reasonably be said to lean on a presumption that women are meant to smell a certain way. It is not as if Naji was unhygienic. She simply wore a fragrance that Zheng personally found to be displeasing.

Compounded with Zheng's behavior, Naji had to contend with Mr. Geyer's advances. Naji testified that Mr. Geyer invited her on dates more times than she could recall. Further, Mr. Geyer often touched Naji's butt when they worked together. On one hand Mr. Geyer could have been wiping chunks of food off Naji's pants. Yet, construing the facts in Naji's favor, and noting that Mr. Geyer has well-known inability to behave himself around women, a reasonable juror could find that Mr. Geyer just frequently found himself with a desire to touch Naji's backside.

For good measure, Naji does not just attest to the harassment she faced at Oceano, but the harassment others faced as well. Naji was aware that Zheng regularly commented on Sipple's breasts. She also witnessed Zheng stare at her coworker's breasts for a prolonged period of time because the coworker made the dire mistake of wearing a low-cut top to work. Like with Sipple, the Court also finds that Zheng's history of sleeping with his employees properly colored Naji's perception of Zheng's behavior.

When considered cumulatively, a reasonable juror could determine that Naji faced frequent harassment and ridicule at Oceano. Again, that Naji speaks of harassment fairly generally, as opposed to recounting more specific instances, is a matter of concern. Again though, Naji's apparently spotty memory is a matter of concern for a duly empaneled jury. It is not an issue for the Court to address on summary judgment. On summary Judgment, Naji has portrayed Oceano

as a place where she constantly had to worry about her boss or her lead server hitting on her, invading her physical space, or outright insulting her. Therefore, the Court finds that Naji has alleged severe or pervasive working conditions at Oceano sufficient to survive summary judgment.

### c. Morgan

For her part, Morgan's experience at Oceano suggests a severe or otherwise pervasive work environment. Given Morgan's testimony that Zheng kissed her without consent, spurred her to drink to excess, invited her on dates, introduced her as his girlfriend, and generally made no bones about touching her, the Court infers that Morgan would have subjectively found Zheng's behavior toward her to be severe or pervasive. One can easily presume that a server at a restaurant might find her job more difficult if her boss is seemingly more interested in being intimate with her than managing her work.

At this stage, Morgan likewise satisfies the objective component of the severe or pervasive test. Again, Zheng purportedly kissed Morgan twice without her consent. Despite Oceano's best efforts to adopt counsel's testimony in place of Morgan's, Morgan defines the ambit her consent, not the Defendant. And, kissing Morgan without consent is a serious physical invasion. Though, this physical invasion is not all that Morgan purportedly suffered at Oceano. Again, Zheng would often grab Morgan by the waist, introduce her as his girlfriend, invite her on dates, and once encouraged her to drink excessively so that he could induce her to join him at a party elsewhere. The Court couples these instances of alleged harassment with other evidence that Zheng's inappropriate behavior was in fact commonplace at Oceano.

Drawing all inferences in Morgan's favor then, Morgan was likely subjected to harassment that was not only severe, but that was an ever-present component of her employment. As with the other Plaintiffs, Morgan's inability to expound at length on the harassment she suffered is a matter

of credibility, and it is one that a jury must consider. For now, it is enough that Morgan has testified to harassing conduct that was seemingly both severe and continuous, even if only recounted more generally than an inquiring attorney might like. Consequently, the Court finds that Morgan has adequately supported her claims that the conditions at Oceano were severe or pervasive.

**d. <u>Schulz</u>**

Turning to Oceano's hostesses, the Court finds that Schulz has adequately established harassment at Oceano that was at least pervasive. For the most part, Schulz claims that the majority of the harassment inflicted upon her at Oceano occurred at the restaurant's hostess stand—Schulz's post of duty. By that token, anytime Zheng or Mr. Geyer came to the hostess stand to harass Schulz they were necessarily impeding her work. As such, Schulz can reasonably be said to have subjectively perceived her working conditions at Oceano as hostile.

A reasonable person could endorse Schulz's assessment as well. Plaintiffs have offered evidence that Zheng would go up to the hostess stand and usher away everyone except for the typically young female hosting staff. Now, this could be seen as a manager telling his employees to stop hanging around the hostess stand and get back to work. But, considering this fact in conjunction with Schulz's testimony that Zheng would touch her and comment on the attractiveness of her more intimate features, a reasonable juror could infer Zheng's nefarious intent in spending time at the hostess stand. The specific instances of harassment that Schulz testified to are not themselves particularly pervasive. Yet, the Court examines those instances alongside Sipple's testimony that Zheng's verbal abuse was a regular component of working at Oceano. As with the other Plaintiffs, the inferences to be drawn from such evidence are further aided by the common knowledge that Zheng historically courted his subordinates.

Like Sipple and Naji, Schulz also had to deal with Mr. Geyer. Mr. Geyer bragged about

the size of his penis to Schulz and habitually made inappropriate comments to her, even if he was not inviting her to be intimate with him. Given the purported frequency of Mr. Geyer's conduct, his hostilities toward Schulz can reasonably be construed as a source of continuous concern for her.

Altogether, it would seem, if only pursuant to the summary judgment standard, that Schulz has supported her hostile work environment claim insofar as the harassment that she faced was frequent. Accordingly, the Court finds that Schulz's hostile work environment may be considered severe or pervasive at this stage.

**e. <u>Ramby</u>**

As for the final Plaintiff, the Court finds that Ramby has sufficiently asserted pervasive hostilities at Oceano. On the subjective front, Ramby's claims essentially mirror Schulz's. When Zheng would supposedly harass Ramby, he would do it at her post of duty and that can reasonably be said to make Ramby's job more difficult. Otherwise, a reasonable person could look at the frequency with which Ramby was allegedly harassed and find that she was subjected to pervasive hostility. Despite counsel's testimony to the contrary, Zheng propositioned Ramby. The only reason he did so in a hypothetical sense was that Ramby was too young to drink. Zheng also regularly lurked behind hostesses, like Ramby, in their dresses as they performed their jobs. Under a view more generous to Zheng, one could assume that Zheng was doing nothing more than monitoring his employees. Construing the facts in Ramby's favor though, a reasonable juror could consider the fact that Zheng made the hostesses wear dresses when they otherwise were not required to and conclude that his tendency to stare at the hostesses while they worked was more depraved than managerial. The Court again gives credence to the assertion that Zheng's predatory behavior was regularly on display at Oceano.

In the end, Ramby has a weaker claim to severe or pervasive working conditions than her fellow Plaintiffs. Nevertheless, when the Court looks at Ramby's testimony alongside other evidence of Zheng's harassing conduct, the abuse Ramby suffered at Oceano was apparently frequent, though not particularly severe. As with all of the other Plaintiffs, Ramby's inability to recount more specific details of Zheng's harassment is itself an issue of fact for a jury to resolve. For now, the Court, thus, finds that Ramby has established working conditions at Oceano that were pervasive enough to survive summary judgment.

**2. Supervisor Liability**

Regarding the element of employer liability, the Court first addresses whether Oceano can be held liable for the harassing conduct of its supervisor, Zheng. Oceano points out that none of the Plaintiffs here suffered tangible adverse employment action. (*See e.g.*, Doc. No. 23 at PageID 1019-20.) Because Plaintiffs did not endure tangible employment action, Oceano argues that Plaintiffs had a duty to report Zheng's harassment before they could invoke Oceano's supervisor liability. (*Id.*) Moreover, Oceano contends that Plaintiffs either reported Zheng's sexual harassment and that harassment was adequately curtailed, or, Plaintiffs did not report Zheng's harassment at all. (*See e.g.*, Doc. No. 23 at PageID 1021; *see also* Doc. No. 24 at PageID 1043.) Consequently, says the Defendant, Oceano cannot be held liable for the sexual harassment perpetrated by its general manager, Zheng. (*Id.*) Conversely, Plaintiffs contend that Oceano can be held liable for Zheng's sexual harassment because Oceano never had a sexual harassment policy to protect its employees in the first place. (*See e.g.*, Doc. No. 38 at PageID 1712-13.)

Plaintiffs have the right of it. Generally, where an employee seeks to hold her employer liable for harassment perpetrated by her supervisor, employers have an "affirmative obligation" to prevent sexual harassment in the workplace. *Faragher*, 524 U.S. at 806. This requirement has led

the Sixth Circuit to characterize theories of supervisor liability in hostile work environment cases as theories of strict liability. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 348 (6th Cir. 2005). When the supervisor's harassment did not result in tangible employment action, however, employers have an affirmative defense available to them which dilutes the strict liability otherwise imposed. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). With this affirmative defense, an employer will be absolved of liability for the sexual harassment of its supervisor(s) upon proof: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

Here, Oceano is correct to note that Plaintiffs never suffered tangible employment action as a result of Zheng's harassment, but Oceano's claim to the affirmative defense fails at the first step. There is no evidence that Oceano exercised reasonable care to prevent sexual harassment in the workplace. Based on Zheng's testimony, Oceano had no sexual harassment policy at all when Zheng was supposedly harassing the Plaintiffs. (Doc. No. 19-4 at PageID 483.) To that end, Zheng testified that Oceano employees did not receive so much as a verbal statement that sexual harassment would not be tolerated. (*Id.*) Indeed, Oceano did not generate a written sexual harassment policy until mid-2025, months after this action got underway. (*Id.*) Whether Plaintiffs reported Zheng's behavior or not is irrelevant so long as Oceano failed to take appropriate measures to prevent sexual harassment.

At most, Plaintiffs were advised that they could report Zheng's sexual harassment to Zheng or to some other manager at Oceano. Even if this were an adequate preventative measure—and, construing the facts in Plaintiffs' favor, it is not—Plaintiffs could hardly be expected to report

sexual harassment to their harasser or to some other person with a history of brushing Zheng's conduct under the rug. Under those circumstances, it would not be unreasonable for Plaintiffs to think that they had no safe outlet to report Zheng's abuse.

Hence, the Court finds that Oceano may be held liable for Zheng's sexually harassing conduct toward Plaintiffs.

### 3. **Coworker Liability**

Whether Oceano can be held liable for the harassing conduct of Plaintiffs' coworkers, like Mr. Geyer, requires slightly different consideration. Where an employee reports that her coworkers are sexually harassing her, the employer's liability, or lack thereof, will be triggered by its response to the employee's complaint. *See Hawkins*, 517 F.3d at 338. "[W]hen coworker harassment is at issue, an employer is not liable for 'mere negligence,' but is liable 'if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.'" *Id.* (quoting *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872-73 (6th Cir. 1997)). "A response is generally adequate … if it is 'reasonably calculated to end the harassment.'" *Id.* at 340 (quoting *Jackson*, 191 F.3d at 663-64).

In the present case, Sipple, Naji, and Schulz all apparently reported sexual harassment by their coworker, Mr. Geyer, and a reasonable jury could find that Oceano's response was largely an indifferent one. Sipple reported Mr. Geyer and her supervisors began ignoring her at work. Naji reported Mr. Geyer and was told not to take him seriously. Schulz reported Mr. Geyer and it is unclear that any action was taken by Oceano at all. All told, it would appear that Mr. Geyer received nothing more from Oceano than a stern talking to, whereas a reasonable juror could hear Plaintiffs' testimony and conclude that the only effective way to curb Mr. Geyer's misconduct would have been to fire him. Oceano submits that Mr. Geyer's harassment stopped when it was

reported. Yet, the record does not make clear that this is the case. With this lack of clarity, the Court must adopt Plaintiffs' perspective and infer that Mr. Geyer's harassing conduct was met with indifference by Oceano's management. Accordingly, the Court finds that Sipple, Naji, and Schulz have made out claims for coworker liability here that are sufficient to survive summary judgment.

**ii. <u>Retaliation</u>**

In this penultimate sub-section, the Court considers Sipple and Naji's retaliation claims. Oceano argues that neither woman can establish a *prima facie* case of retaliation under Title VII because neither was subject to materially adverse employment action as a consequence of reporting sexual harassment. (Doc. No. 23 at PageID 1025-26; Doc. No. 26 at PageID 1088.) As it relates to Naji, Oceano further posits—in a wholly conclusory fashion—that there is no causal relationship between Naji's complaints of sexual harassment and any adverse employment action. (Doc. No. 26 at PageID 1088.)

For retaliation claims, Title VII requires plaintiffs to make out a *prima facie* case to succeed. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). "To establish a prima facie case of retaliation, [the plaintiff] must show '(1) that he engaged in a protected activity; (2) that the defendant had knowledge of his protected conduct; (3) that the defendant took an adverse employment action towards him; and (4) that there was a causal connection between the protected activity and the adverse employment action.'" *Id.* (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002)).

**1. <u>Sipple</u>**

In Sipple's case, the Court finds that her retaliation claims must fail, as she has not pointed the Court to a materially adverse employment action. There is no evidence that Sipple was

demoted, fired, suspended, or subject to any other material hinderance after reporting sexual harassment at Oceano. On this front, that Zheng once made Sipple close out the restaurant bar when she might not otherwise have to is immaterial. At that time, Sipple was responsible for serving tables in the bar area and was, at times, required to close out the bar anyway. In other words, even if the Court assumes that Zheng made Sipple close out the bar out of meanness, he still did not require her to do anything that she would not otherwise have to do. Therefore, the Court finds that Sipple's retaliation claim fails for lack of materially adverse employment action and Oceano's Sipple Motion is **GRANTED** in that regard.

**2. Naji**

Naji's retaliation claims, on the other hand, are supported by both materially adverse employment action and causal connection to complaints of sexual harassment. Recall that Naji was removed from Oceano's shift schedule at the beginning of 2024, just after the restaurant's holiday rush. By being removed from Defendant's shift schedule, Naji would no longer be scheduled to work at Oceano. Construing all facts in Naji's favor, this amounts to a firing, which unequivocally constitutes materially adverse employment action. Furthermore, Naji's firing may be causally linked to complaints of sexual assault. Pursuant to Naji's testimony, Oceano gave no rationale for her firing, they simply told her that they would not be scheduling her anymore, shortly after complaints of sexual harassment were made. This is not the strongest causal connection, since Oceano had no obligation to retain Naji as an employee or tell her why they did not want to keep her around. Regardless, viewing the evidence in a light most favorable to Naji, it is suspect that Oceano would fire Naji for seemingly no reason shortly after she and Sipple made complaints of sexual harassment. Thus, the Court finds that Naji's retaliation claim stands up to summary judgment, even if not based on the strongest evidence.

#### 3. Remaining Plaintiffs

None of the remaining Plaintiffs alleged a theory of retaliation, but Oceano argues that their retaliation claims should fail anyway. The Court cannot adjudicate claims that do not exist. Therefore, the Court **DENIES** Oceano's plea to dismiss the remaining Plaintiffs' (non-existent) retaliation claims.

### iii. Supplemental Claims

Finally, the Court has determined that it will not dismiss Plaintiffs' supplemental state law claims, save for Sipple's retaliation claim under state law, which falls along with her retaliation claim under federal law. Oceano submits that, because Plaintiffs' claims under federal law fail, the Court should decline jurisdiction over their state law claims containing similar allegations. (*See e.g.*, Doc. No. 23 at PageID 1027.) "[F]ederal courts are courts of limited jurisdiction: [w]hen they do not have (or no longer have) authorization to resolve a suit, they must hand it over." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 28 (2025). Additionally, district courts may decline supplemental jurisdiction over state law claims where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Oceano has the law right on this issue, but the Court has largely kept alive Plaintiffs' substantive claims under federal law, so Oceano's position is practically moot. Therefore, the Court **DENIES** Oceano's various pleas to decline jurisdiction on Plaintiffs' state law claims. Sipple's state law retaliation claim shall be dismissed, but because it fails substantively, not because the Court lacks jurisdiction.

## IV. CONCLUSION

In accordance with the foregoing, it is hereby **ORDERED** that:

1. The Court **DENIES** Defendant Club Oceano's Motion to Strike

Declarations of Chelsea Oliver, Jhane Carter, Katelyn Hicks, and Joy Sipple (Doc. No. 45);

2. The Court **GRANTS**, **IN PART**, and **DENIES**, **IN PART**, Defendant's Motion for Summary Judgment on Claims of Joy Sipple (Doc. No. 23). Specifically, the Sipple Motion is **GRANTED** in relation to Sipple's claims for retaliation under both state and federal law. The Sipple Motion is **DENIED** in all other respects; and,

3. The Court **DENIES** Defendant's Motion for Summary Judgment on Claims of Ana Morgan (Doc. No. 24), Defendant's Motion for Summary Judgment on Claims of Jenna Schulz (Doc. No. 25), Defendant's Motion for Summary Judgment on Claims of Malak Naji (Doc. No. 26), and Defendant's Motion for Summary Judgment on Claims of Isabelle Ramby (Doc. No. 27), in total.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, September 22, 2026.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE